No. 38,943

In the Matter of the Estate of MARY C. JONES, Deceased. EMMA JONES ALDRICH, Executrix of the Estate of Mary C. Jones, Deceased, *Appellant,* v. RUTH ELIZABETH JONES, Executrix of the Estate of David S. Jones, Deceased, *Appellee.*

(257 P. 2d 116)

Opinion filed May 9, 1953.

W. D. *Jochems,* of Wichita, argued the cause, and *John McKenna,* of Kingman, was with him on the briefs for the appellant.

*Paul R. Wunsch,* of Kingman, and *Glenn J. Shanahan,* of Wichita, argued the cause, and *Charles H. Stewart,* of Kingman, and *Dale M. Bryant, Morris H. Cundiff, John C. Frank,* and *Garner E. Shriver,* all of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an appeal from a judgment on the final accounting and settlement of an estate by an executrix.

Mary C. Jones, a resident of Kingman county, died testate November 7, 1937, and her will was admitted to probate in that county January 3, 1938. At the time of her death she was survived by two children, a daughter, Emma Jones Aldrich, who was designated by the testatrix as executrix of the will, and was appointed and qualified as such on January 3, 1938, and a son, David S. Jones, who were the principal beneficiaries of her will. By the terms of the will, Mary C. Jones bequeathed $1,500 to a nephew, and a special bequest of $30,000 to the daughter Emma Jones Aldrich. The possession and income from certain real estate was devised to her daughter, Emma and son, David, and the survivor of them, so long as either should live. The remainder of the mentioned property was devised to two great grandchildren. The residue of her estate, consisting of several tracts of real estate and personal property, constituting the bulk of her estate, was devised and bequeathed to Emma and David in equal shares.

On March 3, 1938, the executrix filed an inventory and appraisement showing a bank account of $5,704.96, real estate mortgages and government bonds in the amount of $106,330.66, and the devised tracts of real estate valued at $31,000. After the executrix qualified as such, she paid the expenses of last sickness, funeral expenses, the nephew's legacy, various taxes, insurance premiums upon real estate, and estate and inheritance taxes. Subsequent

thereto on June 20, 1940, she paid to herself as executrix a fee of $3,500, her special bequest of $30,000, and an attorney fee. The personal property was more than sufficient to pay all debts, funeral and administrative expenses, taxes of all kinds, and special bequests. The will of Mary C. Jones gave the executrix no authority over the real estate, nor did any order of the probate court authorize her to take possession of the real estate and collect rents, or exercise any supervision thereof. The executrix under the will took over all the property belonging to the estate, including that specifically devised, and exercised full power, control and direction over it, and for more than thirteen years was recognized by everyone concerned as executrix of the estate with full power, control and direction over the real and personal property owned by the decedent at the time of her death. Throughout this period she, as executrix, received and collected the rents and income from the real estate and property bequeathed and devised under the will, and made and paid for repairs on the property, with the full knowledge of such action on the part of the heirs, and with their apparent consent and approval. She made no accounting in the estate to the probate court and none was requested by any of the parties concerned, until the year 1951 as hereinafter related. She maintained only one bank account in the name of Mary C. Jones estate and to this account she deposited all receipts and incomes from the various properties of the estate, including rental incomes from the real estate. From this same account she paid all taxes, repairs, insurance on the real estate, expenses of administration, and made certain distributions to herself and to her brother, David, and other beneficiaries of the estate. She made both federal and state income tax returns as executrix of Mary C. Jones estate for the years 1938 to 1950, inclusive. In these income tax returns she reported and included the income from the mortgages, government bonds, as well as the rentals collected from the real estate. On these fiduciary returns she claimed and deducted credit for depreciation of property, expenses, maintenance, and otherwise treated them as assets of the estate of Mary C. Jones, of which she was the executrix.

David S. Jones, brother of the executrix, died August 30, 1950. Subsequently, his wife Ruth Elizabeth Jones, appellee herein, was appointed and qualified as executrix of the will of David S. Jones in the probate court of Sedgwick county. On May 3, 1951, she filed an application in the probate court of Kingman county to compel the executrix, Emma Jones Aldrich, to make final settlement and

accounting of the Mary C. Jones estate. On September 5, 1951, Emma filed her petition for final settlement and actually accounted for $138,665.76, consisting of items and amounts received and paid out by her in her official capacity, without regard to receipts and expenditures pertaining to the real estate.

Application was made, and the case was transferred to the district court for hearing (G. S. 1951 Supp. 59-2402a). A pretrial conference (G. S. 1949, 60-2705) was called, and thereafter trial was had in the district court on April 30, 1952.

The case was submitted to the trial court upon the testimony of Emma, along with the probate court files, bank statements, and fiduciary income tax returns filed by Emma as executrix, for the years 1938 to 1950, inclusive, and the individual income tax returns of David S. Jones for the years 1939 to 1949, inclusive.

The trial court extended the action into one including an accounting for rents collected by her from the real estate devised to her and her brother, David. The court gave the executrix full credit for the total receipts and expenditures, as shown by her final settlement, in the amount of $138,665.76, with the exception of $3,500 which it disallowed as being paid to her for her services as executrix, and rendered judgment against Emma in the sum of $20,381.85. The court treated this balance of rentals as a shortage due the estate of David S. Jones. From this judgment, Emma Jones Aldrich, Executrix of the Estate of Mary C. Jones, deceased, appeals.

Appellant first contends that the trial court erred in holding that she, as executrix, was required to account for the rentals on the real estate devised to her and her brother, David S. Jones, under the will of Mary C. Jones, and asserts that at the time the will was admitted to probate, the old probate code was in effect. Under the law as it then stood, title to the real estate and the right to receive the rentals vested in the devisees upon the death of the testator; that the executrix had no jurisdiction or control over the real estate unless the will specifically granted it, and cites several of our authorities to support that contention. Normally, appellant's contention is correct, but her argument overlooks the fact that there are exceptions to this rule. In *Firmin v. Crawford,* 140 Kan. 370, 36 P. 2d 970, it was said:

"It needs little citation of authority to show that as administrator he had nothing to do with the rents from the real estate (*Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50, and cases cited; 11 R. C. L. 123; 23 C. J. 1139), although under certain circumstances the heirs or devisees may be estopped to recover

as against him where the moneys have been applied to taxes and mortgage payments with their knowledge and consent." (p. 372.)

In *Kothman v. Markson,* 34 Kan. 542, 9 Pac. 218, we stated:

"Where an administrator takes possession of the real estate of an intestate under an order of the probate court, and collects and receives rents for the same, which he reports to the probate court, and with which he charges himself as administrator, and a part of which is used for the benefit of the estate, and to pay the costs of its administration, and all is done with the knowledge and consent of the heirs of the intestate, *held,* that the administrator is estopped to deny that the rents so collected and received by him are assets of the estate." (Syl. ¶ 2.)

And again in the case of *In re Estate of Charles,* 158 Kan. 460, 148 P. 2d 765, we stated:

"Where the terms of a will authorize the executor therein named to sell real estate belonging to a decedent on the date of her death and direct, after disposition of certain personal property, that the proceeds of the rest and residue of the estate be paid to the testatrix's children, and, where immediately after the probate of such will the executor takes over the custody and control of the real estate and for a period of time, extending over many years, with the knowledge, acquiescence, consent and approval of not only the devisees named in such will but the probate court as well, collects rents, maintains the property, pays taxes thereon and otherwise handles it as if the terms of the will and the conduct of the devisees and the probate court authorize his possession thereof in his capacity as executor, *held,* that both the executor and the devisees under the will are estopped to deny that the rents so collected and received by the former are assets of the estate, or to assert that the manner in which the proceeds of such rentals have been handled by such executor, preclude either assets or expenditures from being regarded as proper items for consideration in a proceeding in probate court for a final settlement and accounting." (Syl.)

It is stated in 33 C. J. S. 1272, 1273, § 259c(2):

"Whether the representative's liability to account for rents and profits is in his representative or his individual capacity depends on the facts of the particular case. . . . It is usually considered that, where the representative has received rents and accounted therefor or paid them out in discharge of the debts of his decedent, he is precluded from alleging that they belong to the heir and that he received them without authority, and those entitled to the rents may charge him therewith in his representative capacity as for assets rightfully received; while, if he received them without authority, he is also chargeable in his individual capacity for what he has paid out, the one entitled to the rents has the right to elect in which capacity he shall be charged, and he cannot defeat a recovery against him in his representative capacity on the ground that he is personally liable."

At the death of Mary C. Jones, the right of possession to the real estate became vested in her daughter Emma, and son David and, therefore, they were entitled to the rents and profits of the same,

as long as either should live. As a general rule, where the administrator takes possession and collects the rents, they are not to be treated as assets of the estate. However, we are of the opinion that in the instant case the rents must be accounted for as assets of the estate, as the facts herein come within the exceptions mentioned in the foregoing cited cases. For more than thirteen years, Emma had been acting as the executrix of the estate of Mary C. Jones. From the very moment of her appointment, she took over and retained the possession and control of decedent's estate, both real and personal. During all this time, she collected the interest on the outstanding mortgages and bonds and collected the rents from all the properties that were devised to her and her brother, David; that she commingled these funds in one bank account kept by her in the Kingman bank in the name of Mary C. Jones Estate. Out of this same bank account she paid the expenses of administration, including funeral expenses of the decedent, the legacies, her fee as executrix, attorney fees, taxes and insurance on the real estate, made and paid for repairs on the properties, and made partial distributions to her brother, David from time to time. As executrix, she made income tax returns, both federal and state, showing all receipts such as interest on the bonds and mortgages, and the rents derived from the real estate devised to her and her brother, David, not only reporting the rents she collected, but also rents collected and reported to her by her brother, David. As executrix, on all tax returns she took credit for depreciation, insurance and repairs on the mentioned properties, credit for the taxes paid and, in each instance, treated the rents as assets of the estate.

All these things and many others pertaining to matters affecting the real estate, she did with the full knowledge, acquiescence, consent and approval of her brother David, and others interested in the estate. Under these circumstances and conditions, we think the rule announced in *Kothman v. Markson* and *In re Estate of Charles*, both supra, is applicable and that not only the executrix but all persons interested in the estate are estopped to deny that the rents received and collected by appellant executrix are assets of the estate, and held by her in the capacity of executrix.

Appellant contends that she was not required to account for the rents because the will of Mary C. Jones was admitted to probate before the new probate code was in effect. The present probate code (G. S. 1949, chapter 59) became effective July 1, 1939. Under the new code, the executor or administrator shall have a right to

possession of all the property of the decedent (G. S. 1949, 59-1401), with certain exceptions not material here. Under this act, the appellant would clearly be liable to account for the rents. Section 59-2602 provides, in part:

"The rules of procedure herein prescribed shall govern all probate proceedings brought after they take effect and also all further procedure in probate proceedings then pending, except to the extent that in the opinion of the court their application in a particular proceeding when they take effect would not be feasible or would work injustice, in which event the former procedure applies."

Under the above statute, it is expressly provided the rules of procedure prescribed shall apply to all further probate proceedings then pending, except to the extent that in the opinion of the probate court their application would work an injustice. No such order was made in the case at bar. For a period of more than eleven years after the enactment of the new code, her acts and conduct were in accordance with the provisions of the new code, and under this act she was properly accountable, as executrix, for the rents received, as hereinbefore related.

Appellant, in her brief, invites our attention to paragraph 4 of the will of Mary C. Jones which provides, in substance, that she devised and bequeathed to her son, David and her daughter, Emma the possession, use, and income from a certain part of the real estate and to the survivor of them so long as either one shall live, and that therefore upon the death of David, all funds in her hands undistributed to David from such specific real estate became her property as a survivor, and she invites our attention to the case of *Calkin v. Wallace,* 160 Kan. 760, 165 P. 2d 224. We have examined the provisions of the will in the mentioned case and find that the decision based thereon is not in point or controlling under the provisions of the will in this action. However, the general rule contained in the mentioned case, to the effect that in the absence of a contrary expression of intent in the trust instrument, it will be assumed that the grantor of the trust intended that income which at the time of the death of the life beneficiary was available for distribution in the hands of the trustee, but had not actually been paid over to the life beneficiary, was to go to his estate, is applicable here. We find nothing in the will of Mary C. Jones which would require a contrary holding. The lower court did not err in requiring appellant to make a complete accounting of her activities as executrix of the estate.

Appellant next argues that if the executrix is required to account for the rents on her final accounting, then the three-year statute of limitations, G. S. 1949, 60-306, Second, should apply to such accounting, and that appellant should have been required to account for the rents only for a three-year period prior to May 13, 1951. It is to be remembered that the court found the executrix should account for the rents in her representative capacity as executrix of the estate, and not in her individual capacity. The statute of limitations provided in our civil code does not apply to claims and demands of a beneficiary to his rightful share of the proceeds and distribution of an estate on the final accounting and settlement by an executrix of the estate. The general rule is stated in 21 Am. Jur. 658, § 495:

"In the absence of statute fixing the term of an administration, an executor or administrator is not generally relieved from being called to account in the probate court by the mere lapse of time without any action by the court. Even after the lapse of many years, the beneficiaries are entitled to an accounting. Statutes of limitation do not ordinarily run in favor of a personal representative so as to bar an action for an accounting. Before he can claim the benefit of the statute, the continuance or continuity of his office must in some way be interrupted, as by judicial discharge, disclaimer, or breach of trust. The reason for this doctrine is that his trust is a continuing one. He has many duties to perform in administering the estate and is presumed to be engaged in performing them in subordination to his trust, and not to be maintaining an attitude hostile to his cestui que trust. . . ."

Where a person during his lifetime, as executor, stands in the relation of trustee to a fund, he therefore cannot plead the statute of limitations as against the rights of the next of kin or persons entitled to the distribution of assets of the estate. (34 Am. Jur. 292, § 376.) This rule was recognized in the case of *In re Estate of Park*, 147 Kan. 142, 75 P. 2d 842, wherein we said:

"Our statute, G. S. 1935, 60-306, containing the limitation provision sought to be applied here is confined in its scope of operation to 'civil actions,' and consequently does not govern remedies in 'special proceedings' such as in the administration of estates, and that this was the intention of the legislature is evident from the provisions of G. S. 1935, 60-3823, which provides that:

"Until the legislature shall otherwise provide, this code shall not affect . . . proceedings under the statutes for the settlement of estates of deceased persons, . . ." (pp. 150, 151.)

Under the facts in the instant case, as applied to the decisions of our state, the appellant cannot assert the statute of limitations of the code of civil procedure in her final accounting and settlement in the mentioned estate.

Appellant next contends that the court erred under the facts in this case in disallowing the compensation previously paid to her, and asserts that in determining tax liabilities of the estate, it was necessary that the executrix and attorney fees be set up as a deduction, and that the trial court penalized her by forfeiting her compensation. It may be noted here that the executrix's fee was never allowed or approved by the probate court. On this issue, the court made extensive findings of fact and concluded:

"I am of the opinion that the Executrix fee in the amount of $3,500.00 claimed and deducted by her in her report should be disallowed. In divers ways the Executrix has been unfaithful in keeping records and accounting for the estate funds, creating great uncertainty and additional expenses in determining respective rights. Her report as to receipts from personal property is made largely from conclusions and her bank account with no supporting data reveals nothing but shortage above noted if her testimony and the fiduciary income tax returns are substantially correct."

The rule, established by this court in a long and unbroken line of decisions, is that where a trial court makes a finding of fact our only function on appeal is to ascertain whether there is substantial competent evidence to support the finding as made, and not whether some evidence appears in the record which would have supported a contrary finding had the trial court seen fit to make one; and in the determination of that question, the appellate court does not weigh the evidence but is concerned only with whether it supports the findings as made by the court. (*In re Estate of Johannes,* 173 Kan. 298, 300, 245 P. 2d 979; *Bradbury v. Wise,* 167 Kan. 737, 743, 208 P. 2d 209; *Pearcy v. Williams,* 163 Kan. 439, 442-3, 183 P. 2d 243; *In re Estate of Spark,* 168 Kan. 270, 275, 212 P. 2d 369.)

No useful purpose would be served by detailing a recital of all the evidence in this case. We have touched the high points of the facts related in the opinion and examined the record minutely and our conclusion is that the findings and conclusions of the trial court are sustained by substantial competent evidence, and the facts warranted the court's decision in disallowing appellant's claim for compensation as executrix. (*In re Simmons Estate,* 136 Kan. 789, 18 P. 2d 117; *Vincent v. Werner,* 140 Kan. 599, 38 P. 2d 687.)

Appellant next complains that the court erred in admitting in evidence and considering the income tax returns filed by her. An examination of the record reveals that this complaint was not asserted as a ground of error in appellant's motion for new trial, nor was it presented to the trial court, but is asserted here for the first time. We have consistently held, when it does not affirmatively ap-

pear, that a question raised on appeal was presented to and determined by the trial court, this court does not consider it on review. (*Holton v. Holton,* 172 Kan. 681, 243 P. 2d 222.)

In view of what has been said, the judgment of the trial court must be affirmed.

It is so ordered.

THIELE, J. (dissenting): I dissent to the following extent. In my opinion the evidence disclosed conclusively that the executrix performed valuable services for the estate. Even though she was not warranted in paying herself without an order of the probate court and taking credit for the payment in her final account, on final settlement an allowance for those services should have been made to her.

PRICE, J., concurs in the dissent.