No. 37,976

THERESA B. GOODELL, *Appellee*, v. JOHN OLIN and FRED W. GOODELL, *Appellees*, ORREL F. GOODELL, *Appellant*.

(227 P. 2d 126)

Opinion filed January 27, 1951.

*Stanley E. Toland*, of Iola, argued the cause and *Wayne Loughridge*, of Garnett, was with him on the briefs for the appellant.

*Bert L. Woods*, of Garnett, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to quiet plaintiff's title to real estate. The defendants were two brothers of plaintiff. Judgment was for plaintiff. Defendant has appealed.

Plaintiff in her petition stated that she was the owner and in actual possession of a described 240 acres of land; and that none of defendants were entitled to any interest in it and she was entitled to have her title quieted; that she and her predecessors in title had been in open, notorious and peaceable possession of it for more than 15 years; that defendants claimed some right to it, the nature of which she could not state, and whatever claim they had was without right. Plaintiff prayed for a judgment quieting her title.

Orrel Goodell, one of the defendants, filed an answer and cross petition. In his answer he pleaded first a general denial. He next alleged Ella Goodell was the mother of Theresa, the plaintiff, Arthur and Orrel defendants and Fred, who was not a party; that she had been the owner in fee simple of the land in question and had conveyed it to her daughter and three sons in equal shares and as tenants in common by her warranty deed under date of May 26, 1922, and the deed was filed for record on December 16, 1946, and at the making of that deed Ella orally reserved the rents and income from the property for her lifetime; that as co-tenants the parties stood in fiduciary relation of mutual trust and confidence in respect to the common estate owned by them; that any estate which plaintiff might claim from any other source than the deed of 1922 inured to the benefit of her co-tenants. The answer then alleged that Theresa became the owner of an undivided one-fourth interest in the real estate by the above deed and on July 19, 1946, conveyed 80 acres of it to her brother Fred by a warranty deed; that Fred became the owner of an undivided one-fourth of all the real estate involved in the deed of 1922, and also became the owner of an additional one-fourth of the 80 acres conveyed by Theresa by her deed of July 19, 1946; that Fred and his wife conveyed to Theresa an undivided one-half of the 80 acres by their deed of December 17, 1947. The answer then alleged that as to the 80 acres of the land involved Theresa owned an undivided one-half, Arthur an undivided one-fourth and Orrel an undivided one-fourth and as to the quarter section Theresa, Arthur, Orrel and Fred each owned an undivided one-fourth. The answer then pleaded that Fred was a necessary party and asked that he be made a party defendant; that Theresa had acquiesced in the benefits of the real estate conveyed by their mother by her deed of 1922; had ratified her mother's deed by her deed of July 19, 1946, and having so accepted the benefits she was estopped from denying the title of her brothers; that Fred had acquiesced in the benefits of the deed of his mother of 1922 and having so ratified it he was estopped from denying the right and title of his brother. The prayer of the answer was that the title of all four be quieted in accordance with their interests as shown in the answer.

In his cross petition Orrel pleaded the ownership of the land just as he had pleaded it in his answer. He pleaded further that Ella in making her conveyance of 1922 orally reserved the rents and income during her lifetime; and that Fred had been in possession of

the real estate since his mother's death. The prayer of the cross petition was for partition of the real estate and that Fred be required to make an accounting for the rents and income of the property since the death of his mother.

For a reply to defendant's answer and an answer to his cross petition Theresa first alleged a general denial. She then alleged that Ella gave her a warranty deed to the real estate in question on January 22, 1932, and the deed was duly filed for record on June 23, 1932; that she immediately entered into possession and had been in continuous, exclusive, adverse and undisputed possession ever since. She specifically denied that the real estate was on May 26, 1922, conveyed by Ella to Arthur, Theresa, Fred and Orrel, and alleged that the deed of 1922 was never delivered by Ella to any of the grantees and that possession of it was obtained by Orrel by fraudulent methods unknown to plaintiff long after Ella's death and long after the real estate described had been lawfully conveyed to plaintiff. She further denied that any of the defendants had any interest in the property; denied that any oral reservation of the rents and income from the real estate was ever made by Ella. She further alleged that if Orrel ever had any claim to the real estate that right had been barred by the statute of limitations. She specifically denied that Orrel was entitled to an accounting. She prayed that Orrel take nothing and for judgment quieting her title and that partition be denied. These pleadings made an issue of whether the deed of 1922 had ever been delivered to any grantee or anyone for the grantees during the grantor's lifetime.

The cause was tried by the court on May 6, 1949, and prior to its commencement Orrel requested the court to make findings of fact and conclusions of law with reference to the deed of May 26, 1922, and on the issue of the nondelivery of the deed urged the application of the presumption of its delivery arising from the possession by Orrel.

The journal entry was in part as follows:

"The Court further finds that the plaintiff, Theresa B. Goodell is the absolute owner in fee simple, entitled to and in the actual possession of the following described real estate situated in Anderson county, Kansas, to-wit:

Northeast Quarter of Section 5, Township 23, Range 19, East of the 6th P. M., except railroad right-of-way and the East Half of the Northwest Quarter of Section 5, Township 23, Range 19;

that neither of the defendants, nor any of them have any right, title, interest, lien or estate in, to, or upon said described real estate, and that plaintiff is

entitled to have her title in and to said above described real estate quieted as against any pretended interest, right, title, lien, claim or estate asserted by said defendants, or either of them in and to said above described real property.

"The court further finds that, 'regarding the defendant, Orrel F. Goodell's 'Request for Application of a Presumption of Law,' filed May 6, 1949, the Court assumes that the presumption of law contended for is in full force and effect and recognizes the presumption. However, the Court holds that in this case the presumption falls before and must yield to the facts in the case. It is true that the defendant, Orrel F. Goodell, had manual possession of a sealed envelope (Exhibit 4), containing the deed (Exhibit 3), mentioned in such request, but not in the sense that there was a delivery thereof to him. Ella M. Goodell, the grantor, never parted with the legal possession and control of the deed. She had the deed with her at Smith Center, Kansas, deposited with other papers in her daughter, Theresa B. Goodell's safety deposit box. She and her daughter came to Colony, Kansas, about 1927, where there was no convenient place for her to keep the deed. The defendant, Orrel F. Goodell, her son, had a safety deposit box in a bank there and the deed, together with other papers were handed to him in Colony, for purposes of safety only. He was a mere depository and was trusted as such with the deed until such time as Mrs. Goodell might want it returned to her. Her daughter Theresa acted for her in taking the deed to Orrel and Orrel's refusal to return the deed was unwarranted.

"CONCLUSION OF FACT

"The Court concludes the following facts:

"I.

"Theresa B. Goodell in the transactions with Orrel F. Goodell regarding Exhibit 3, acted as her mother's agent.

"II.

"That the refusal of the defendant, Orrel F. Goodell, to return Exhibit 3 to Ella F. Goodell was arbitrary and unwarranted.

"III.

"That Ella M. Goodell executed the deed in evidence as Exhibit 3, but never parted or intended to part with the possession thereof in the sense that she delivered it to anyone.

"IV.

"That the filing of Exhibit 3 for record by Orrel F. Goodell was presumptuous on his part and without authority from the grantor therein or anyone acting for her.

"V.

"That the defendant, Orrel F. Goodell, knew of the existence of the deed from Ella M. Goodell to her Theresa, in evidence as Exhibit 1, as early as sometime in June, 1932.

"VI.

"That the execution of Exhibit 1 was the free and voluntary act of Ella M. Goodell and that she delivered said deed in the Plaintiff, Theresa B. Goodell.

"VII.

"That Theresa B. Goodell did not stand in a fiduciary relation to her brothers with regard to the transactions relating to the deeds in evidence as Exhibits 1 and 3.

"VIII.

"That the defendant, Orrel F. Goodell, has no right, title, or present interest in the real estate conveyed to Theresa B. Goodell by Exhibit 1."

The court made conclusions of law as follows:

"CONCLUSIONS OF LAW

"I.

"Theresa B. Goodell is the owner in fee simple of the real estate described in Exhibit I.

"II.

"Orrel F. Goodell has no present interest in the real estate described in Exhibit I.

"III.

"There having been no delivery of the deed, in evidence as Exhibit 3, none of the grantees therein have any interest in the real estate described therein by reason of said deed."

Judgment was entered accordingly.

Orrel filed motions for a new trial and to set aside findings of fact and conclusions of law. These motions were overruled. Hence this appeal.

Orrel states the points of law involved to be

"1. Did the Court err in concluding that the presumption of law relied upon by appellant was overcome by evidence?

"2. Did the Court err in overruling the general demurrer to plaintiff's evidence?

"3. Did the Court err in rendering judgment quieting title in the plaintiff and denying partition to the appellant?

"4. Did the Court err in overruling the appellant's post-trial motions?"

The presumption of law relied on by Orrel is that on the question of nondelivery of the deed there was a presumption of delivery arising from its possession by him. There is no question but that sometime after his mother's death Orrel did have the deed in his possession and twenty-four years after its execution had it recorded. The trial court found, however, that his possession of it was only manual and that there had been no delivery at any time of the deed to him other than for mere custodial purposes. Orrel argues here that there was no evidence whatever to sustain such a finding.

This argument sends us to an examination of the evidence. In the first place, we note the land in question had been conveyed to

Ella by her husband before his death. Had there been no deeds at all at the death of Ella the four children, Theresa, Arthur, Fred and Orrel, her only heirs, would have inherited the land in question, each an undivided one-fourth. The family was reared on it near Colony, Kansas. It was the old home place.

Theresa testified that her mother gave her the deed of 1932 conveying the land to her and she had it recorded. She then testified that in 1922 she was teaching school at Smith Center and her mother, a widow, was living with her, her mother executed a deed conveying the land in question to the four children, put it in an envelope and had her, that is, Theresa, write on the outside of the envelope that it was not to be opened until after her death; that she placed it in a strong box at Smith Center, where it remained until 1932 or 1933; that her mother lived with her and was helpless after 1926, and they both moved to Colony in 1926; that after moving to Colony she had a talk with Orrel about needing a strong box for her and her mother's papers; that Orrel offered some space in his strong box and the envelope with the 1922 deed in it was placed in his box at the bank. She further testified that in 1932 she asked Orrel for her papers and her mother's papers and he refused to give them to her; that when the deed of 1932 was given her she had it recorded; Fred rented it from her and paid the rent to her and she paid the taxes.

Fred testified that since Ella gave Theresa the deed in 1932 he had rented the farm from her and paid her the rent and his occupancy of the farm had been continuous from 1932 until the time of the trial.

Arthur testified that in 1932, when he was visiting his mother, she asked him to bring a notary to the place because she wanted to deed the place to Theresa; that he did not comply on account of shortness of time but told his mother to have Theresa take care of it. On redirect examination he testified that Theresa took care of her mother, who was helpless, until her death in 1941.

At this point Theresa rested her case and Orrel demurred to the evidence on the ground that it was insufficient to show a cause of action in favor of the plaintiff and against the defendant. This demurrer was overruled. This action by the trial court is one of the errors of which Orrel complains.

Because Orrel's testimony sheds some light on the whole picture, however, it will be noted now before we consider the alleged

errors. He testified first about some royalty from the sale of gas produced on the farm in 1922, which was paid to his mother. This is of no consequence here. He then testified that in 1926 his sister gave him the deed of 1922; that it was sealed in an envelope at the time and the handwriting on the envelope was his sister's. The envelope was introduced. He then testified that Theresa said it was the deed Ella had given the children; that she had no place to keep it and asked him to keep it in his strong box; that he put it in his box at the bank; the bank failed in 1931; he was not able to get the deed back until 1934 and continued to keep it in his strong box until 1941, when his mother died; that after his mother's death he opened the envelope; took the deed out and had it recorded. He testified further that in 1934 Theresa asked him for the envelope in which the deed was and "I told her if she had another deed made she could not have that one." He denied that she had ever told him she had a deed to the place; that he first learned there was a deed from his mother to Theresa after he had the deed of 1922 recorded in 1946.

The issue before the trial court was whether the deed of 1922 conveying the land in question to all four children was delivered to either of the children or to some one else for them during the grantor's lifetime. (See *Bradbury v. Wise,* 167 Kan. 737, 208 P. 2d 209.) The trial court found there had been no such delivery. If there was substantial evidence to sustain such a finding it will not be disturbed on appeal. (See *Pearcy v. Willams,* 163 Kan. 439, 183 P. 2d 243.) In such a case the intention of the grantor is the deciding factor and we will consider all the surrounding facts and circumstances on that issue. It seems when we do this, laying aside the testimony of Theresa, the testimony of Orrel himself is sufficient to sustain the finding of the trial court that the delivery to him of the envelope containing the deed was for nothing more than custodial purposes. He seems to have so treated it until after his mother's death. All the other circumstances—the fact that Ella was helpless, that Theresa must of necessity transact a great deal of her business for her, that she took care of her for years before she died, the mother's conversation with Arthur about deeding the land to Theresa, and Fred's paying rent to Theresa—all sustain the court's findings.

The judgment of the trial court is affirmed.